Good morning, Your Honors. May it please the Court, Ted Frank on behalf of the Brennan Objector Appellants. Courts encourage settlements, but a district court's discretion to approve a class action settlement is not absolute. As this Court noted in Staten v. Boeing, class actions present the unique problem of class counsel facing a conflict of interest in negotiating on behalf of the class and their own attorney's views at the same time. Thus, district courts presiding over class actions must ensure that class counsel are behaving as honest fiduciaries for their putative clients. To borrow my colleague's phrase, can we cut to the chase? Absolutely, Your Honor. The main gripe you have here is that the amount of attorney fees appears greatly to exceed the value of the settlement for the plaintiff. That is the main gripe that makes both the attorney's fees unreasonable and the settlement as a whole unreasonable. And the settlement as a whole. So if you are correct in obtaining a reversal, we have to reverse everything? We cannot just reverse the fee order, for example? Well, certainly the Court has the power to do whatever it wishes. But that is a proper thing to do. The proper thing to do would be to throw out the entire settlement, Your Honor. Because you have to view it in the totality. You have to look at the fees along with the settlement and look at how they may relate one to the other. That's correct. That's what Rodriguez says. That's what Lobat says. That's what Staten says. The difference between disapproving the entire settlement and disapproving just the fee award is that the former would permit a reallocation? Certainly. That's exactly right. If you just disapprove the fee award, then it's just a question of who gets the $850,000, the defendants or the class counsel. Well, now what are you saying? Are you saying that if we vacate both, then somehow the district court would be on remand reallocating a settlement? No, Your Honor. Or they'd all have to start over from scratch? The district court has three choices. It can approve the settlement, it can reject the settlement and set the case for trial, or it can reject the settlement and say go back and negotiate. Okay. Now, are you arguing then that it is impermissible in this kind of case to have disconnected or separate fee settlement, that it has to instead be some kind of common fund so that if ‑‑ let me back up to lay a foundation for my question. The district court clearly held her nose in approving this. She was not excited about the attorney fee order and wasn't very happy with the documentation that counsel put forward in justifying their fees. But nonetheless, looking to the Lodestar bogey, decided that even if she had done some ‑‑ the Lodestar effort that she made, still found that the $800,000 was below what a Lodestar would be. So skipping back to what she said in approving the settlement, she said, I approve the settlement because ‑‑ or on the ‑‑ to the class because I look at it on its own terms and it seems to be fair. It seems to be given the strength and weaknesses of the case and so on and so forth. And I'm going to look at that. And I decide that that is fair, just and reasonable. And then she turns to the attorney fee award later and she decides not to reduce the $800,000 down to, say, cut it in half or whatever. She notes that the money, if she did cut it in half, would not go to the class. It would simply go back to the defendant. So I'm not exactly sure what the district court should be doing on remand. Well, the district court on remand should reject the entire settlement. And what? And then say you have to go back and ‑‑ Go back and negotiate a settlement where the class benefits and the attorney's fees are proportionate to one another. And what's the proportion? Well, this court has said 25 percent is the benchmark. Maybe that can be a little bit higher, 30, 35 percent, when you have a very small settlement. Okay. So you're saying that structurally the rule of this case should be that there cannot be disconnected settlement and fee agreements. I want to clarify that because certainly it's okay to negotiate a fee agreement and a settlement separately. And it's okay for the court to consider those separately, though when considering the settlement it has to consider the fee award as part of that settlement, as Rodriguez dictates. The problem here is that any denial of fees would revert back to the defendant, which serves ‑‑ Okay, but so what? I mean, the issue is you're assuming somehow that that money, I gather, was on the table, that there was a pool of money and that the attorneys, without collusion, because there's no finding of collusion here, that the attorneys for the class shortchanged the class because they wanted to allocate $800,000 of the pool of money, be it insurance or whatever else it was, to their fees and shortchanged the class. So the Cypre should have been half a million maybe or could have been more. Is that your theory? That's not just my theory. It's the Ninth Circuit's theory in Lobat and in Staten and Eighth Circuit in Johnson v. Comerica. That's the economics of what actually happened, is that every dollar that the attorneys negotiate for themselves is a dollar that's not going to the class. Motorola was willing to put up a million dollars, close to a million dollars, to settle this case. But there's no monetary relief going to the class itself, right? That's absolutely correct. This is a $0 settlement and it's a subject of national scoring that puts the courts in disrepute, puts class actions in disrepute. Just approving the settlement by itself is outside the scope of the judge's Rule 23e authority under Molsky v. Glodge. I guess I can understand the nature of your response if you had a situation where the class got monetary relief, which I take it wasn't even asked for in this case. Well, the complaint asked for monetary relief. The complaint asked for millions of dollars. But the settlement itself, zero. That's correct. And the judge said, I think this is the best you can get. No, the judge said this is more than you might have gotten, which happens to be the wrong legal standard. Might have gotten nothing. That's correct. But that's true in any class action. And if that's the legal standard, then any class action where the plaintiffs negotiate a peppercorn for the class, well, that's more than nothing because the class might have gotten nothing. The might have gotten standard is just simply not the standard in this court or in any court. This may be overgeneralization, and please tell me if it is. My understanding is that the action gets filed. There's no class certification. It goes to a jams-type retired judge for settlement discussions, correct? Correct. Then the defendants in the class action, Motorola, whatever, file a motion to dismiss. That's correct. And then everybody goes back to the settlement table and they come up with this. Did the district court make any findings as to the likelihood of success of that motion? The district court said that some claims were likely to survive. She said more than that on the attorney fee. She said she'd actually already decided tentatively to let some of the case go forward, not that she had disclosed that to the plaintiffs. I stand corrected, yes, Your Honor. But she also said, and I quote, the court expresses no opinion on the actual merits of the suit. That's correct, too, Your Honor. That's correct, too. And I would submit that when you have a settlement this bad, the merits are irrelevant. If the case is very good or just good or even just mediocre. You're not challenging the use of clear-sailing provisions, are you? I'm saying that a clear-sailing provision requires additional scrutiny. Not in this case am I asking the court to hold them illegal or anything. That's not before this court, but certainly I find it ethical. Thank you. What is the standard that she should have applied in examining the attorney fees in the context of this case when she has gone through and done a low-star analysis? Is it your position that she should have, in addition, done the benchmark analysis, which would traditionally be applied to a common fund and not to a clear-sailing case? Well. What's the framework? If we send it back, what did you tell her that she did wrong? Those two concepts are orthogonal, Your Honor. You can have clear-sailing and a common fund. So the fact that there was clear-sailing is not the issue here. That just calls for additional scrutiny. The problem here is that the fees revert back to the defendant. So basically the class attorneys have structured the settlement to benefit themselves at the expense of the class. So that in itself is problematic and sufficient reason, independent reason, to reject the settlement. But answering the question, what is it we tell the district court? I would ask this court to adopt the rule in Murray v. GMAC and adopt just a general rule that when attorney's fees are disproportionate to the class relief, that it violates 23E and 23A4 and that the attorneys are negotiating a self-serving settlement at the expense of the class. What is the monetized value of the relief here? You're talking $100,000 in side prey, which we'll assume is for the benefit of the class, and $850,000 in attorney's fees, so $950,000. What about the injunctive relief? The injunctive relief, there's no evidence that that had any value whatsoever. There's no evidence that it made a material difference to the warnings already in the manual. And they presented no evidence on that. There's nothing in the record on that. In civil rights cases that I'm familiar with, there frequently is not any vast monetary damage at all. I agree. That doesn't require. I would not ask. Do I get to ask a question? Please do, sir, Your Honor. Does that require the rule in this case? Would that apply to civil rights cases? No, Your Honor. I think this is a consumer fraud case. And courts have already ruled on this. Judge Diane Wood in the Syntec Fuel v. DHL Enterprises case said that when you have a consumer fraud case, prospective injunctive relief is not a benefit to the existing class members. Imagine if I sued Bernie Madoff on behalf of a class of his investors, and I say, look, I got this injunctive relief. Bernie Madoff has promised that in all of his future investments he'll disclose that he's running a Ponzi scheme. That's not relief to the class members. That's wonderful injunctive relief, but it's not a benefit to the class, and it's not something that the class counsel can take credit for. I'd like to reserve some time for rebuttal given that I'm facing two appellees here. Before you sit, one question. The existing judge did address the question of whether it should reduce the award, and then it discussed why she wasn't going to reduce the award for attorneys. Had she reduced the award, would she be here today? I'd say she chopped it in half and said $400,000 is what's reasonable in light of all the circumstances, in light of the, quote, minimal benefit to the plaintiffs. I would still be here. It would just be a narrower appeal. Thank you, Your Honor. Daniel Warshaw on behalf of the plaintiffs. May it please the Court, Your Honor, I'm going to split my time with counsel for appellee defendants, Mr. D. The district court made no error in approving both the settlement and the award for attorneys' fees. The district court went through a painstaking, deliberate process and followed the Ninth Circuit Churchill factors and made specific findings in the record that each factor supported the settlement. No one here is standing here saying this is the greatest case in the entire world or the best settlement in the world, but that's not the standard. The Ninth Circuit says that class settlements are favored. It also says that you do not need an absolutely perfect settlement. Settlements are a product of compromise, and settlements are a product of evaluating the case at the time it comes up for negotiation. The parties went through the motion to dismiss, fully briefed it, and with that benefit the court looked at and analyzed the strengths and weaknesses of the case and approved the settlement. There's nothing the district court did below that was in violation of the law with respect to class settlements. Well, here's one thing that troubles me about the district court's opinion. She said that after she went through this and set out her reasoning, I thought, rather candidly and carefully, but she said, most importantly, the award of fees, costs, and incentive payments did not deprive class members of funds that otherwise would have been distributed to them. Now, counsel's argument is that's wrong. In fact, counsel, as I understand his argument for the objectors, is that by definition economically the allocation by counsel, class counsel, of $800,000 of money that was available for settlement was, in fact, distributed to either class counsel or to the defendant. But for that structure of the agreement, instead of a common fund, any ruling by the district judge to, say, cut $400,000 off the $800,000 would have benefited only the defendants. So that's what she is picking up on, but that ignores the antecedent step that by structuring it that way, the money that clearly the defendants were willing to pay, which included $800,000 since they had agreed to not contest up to that amount, $850,000 with the rest of it. So how do we know that the fee agreement didn't deprive the class members of money that otherwise would have been distributed to them? Your Honor, this court, as well as a district court, can understand that a process provides fairness. And the process that the parties followed, as well as retired Justice Stone, ensured that this was a fair process, meaning that the settlement was negotiated first and separately. Well, but wait a minute, counsel. I've been there and done this. I used to do class actions and do mediated settlements. And counsel on both sides, without colluding, go into the settlement negotiations with some sense of how many dollars they want. And they certainly know, class counsel certainly knows, that they're not doing this for free. And they certainly know how much money they would like to extract out of this negotiated settlement. So it's not, I don't think, speculating very much. Class counsel went in knowing what their bogey amount was on fees, and they could negotiate the full class settlement and still have in mind that they want to make sure, if they think there's a million dollars on the table, they want some percentage of that for themselves. And they can structure their bargaining position in the mediation or wherever with that in mind. Your Honor. That's why these have red flags all over them, as the courts have said. Your Honor, without disclosing things that took place in the mediation. I'm not asking you to disclose them. I know you're not. In this situation, from a legal standpoint, in a vacuum, the question presupposes that class counsel understands there's a pool of money in mind. There's a dollar amount on that pool of money. That was not the situation here. There was no pool of money. There was no number discussed between defense counsel and plaintiff's counsel saying we're willing to settle the case for X. Was there an insurance pool available that everybody knew about? No. Not that plaintiff's counsel was aware of, and it wasn't disclosed during the mediation process. So we were uncertain as to what the defendants were willing to pay. So what we did is we negotiated the best settlement we could for the class at the time of the mediation, made a deal, had it approved by Justice Stone, and then and only then, to try to avoid a conflict, was negotiate fees. And in the negotiation of fees, we were willing to take, I understand the district court didn't agree with the lodestar presented, but we were willing to immediately take a 50 percent haircut on those fees and out-of-pocket costs to try to make this settlement go through. Your Honor, it's another very important point, is that the objector values the injunctive relief at zero, which is completely incorrect. This is not a consumer fraud case as presented by the objector. This is a case regarding false advertising. The advertising was that, as plaintiffs alleged in the complaint, the use of these products could cause noise-induced hearing loss. You also made a claim for restitution, punitive damages, and other benefits for the plaintiffs that they never got. Of course. Your Honor, we did that when we drafted the complaint. We gave it as broad as possible and see where the case takes us through discovery and through challenges to the sufficiency of the complaint through motions dismissed and summary judgments. So, yes, initially we were seeking that. But after the motion dismissed was fully briefed, we understood the defendants had some very strong defenses, which the Court recognized in the lower court opinion. But the point is, Your Honor, that we were willing to make this settlement happen because we realized that the injunctive relief does have significant value. Defendants spent a million dollars on notice in this case. The notice in and of itself provides a benefit to the class because the notice explains the problem with noise-induced hearing loss. I thought the district court discounted that. I'm sorry, Your Honor? I thought the district court discounted that. No, Your Honor. Not the notice. No. The notice was $999,000 for the print. I mean, she didn't think that much of it, but maybe I'm just misremembering her. So the defendants in effect paid $2 million. They paid $1 million for notice, Your Honor. And they paid what they've been asked to pay, $850,000 in fees and costs, and $100,000 to the side print. I only have half the time remaining, so I'm going to turn it over to defense counsel, unless there's any further questions for plaintiffs. Thank you. Good morning, Your Honors. Terry Dee on behalf of Motorola and the other defendants in this case. I'd like to first hit the point that Judge Fischer asked about, which is, how does the district court know? Well, I can tell you the district court knew because we told her. The way we structured this settlement was to settle the class claims, the merit claims, first. And there's an incentive there for the defendants, my client and the other defendants, not to give the plaintiffs any more incentive to bring another lawsuit like this against our clients. And so the negotiated settlement was exactly what we thought would be fair, adequate, and reasonable, that the plaintiffs also agreed to, but would not give a dollar more to the named plaintiffs. That was the full stop, end of the negotiations. And then we went on to the attorney's fees. Sure, we knew we were going to have to pay some money to the attorney's fees. They weren't going to be doing this for free. And we entered into steep negotiations. We don't know what their bills are. We don't see those. We know kind of generally the work that they did, and we can negotiate that. But there's no pool of money that we were setting aside to give to the class and the whole settlement as a whole. This was very distinct. There was a line in the sand. This is how much we're paying to the class, which was just $100,000. We didn't really want to even pay anything to the class, but we did. That was part of the negotiated process. And then we negotiated the fees. This isn't a common fund reversion type situation. This was a situation where we were saying, you've got the bills. We know you're Lodestar. This is less than you're Lodestar. You prove it to the court and see if you're worthy of getting these fees. If the court says these are warranted, then we'll pay them up to a cap. Do you agree with me that the district court, unlike a mediator, whose goal is to resolve a case, the district court is charged with more here between what the lawyers get and between what the plaintiffs get. Do you agree with that? Yes. Where did the district court make that analysis? Well, the court, in its fee order, it looked at, I think, not necessarily the balance between the two, but actually looked at whether it was fair, adequate, and reasonable for the class. Both did that in the original order and in the fee order. Found that the class was likely not to achieve any more trial than they were getting through this settlement. And found that there was some minimal benefit to the class. And also found that there was little, that there was, on the merits, that she had some real doubts about the merits of the plaintiff's case. You called it arguably questionable but not frivolous, whatever that might mean. I think she meant that it didn't rise to the level of Rule 11 sanctions, but certainly I think she made the decision that the defendants had very significant defenses and the plaintiffs were very, it was very high risk, that the plaintiffs were not going to achieve anything through a trial more certainly than they would get in this settlement. The opponent's position in this case, again, to cut to the chase, is when you've got a group of plaintiffs receiving, in the district court's words, minimal benefit, and you have counsel for plaintiffs receiving, if you're looking at the two, one might argue, considerably more benefit, there's something wrong here. Well, maybe there is something wrong there. Maybe there is an imbalance. But the remedy there is not to throw the whole settlement out, because the remedy then is to adjust the attorney's fees. Because, and that's precisely what the settlement agreement contemplated. It addressed this exact point and said that there is not a single dollar of attorney's fees or costs or incentive payments to the named plaintiffs that is contingent upon, I should say it differently, the merit settlement is not contingent upon the named plaintiffs getting any incentive payments or the attorney's fees being paid, not a single dollar, or costs being paid, not a single dollar. And so if there is an imbalance there, then adjust the attorney's fees. The objectors here are not saying that there should be any more benefit to the class, that the underlying settlement of the merits settlement was improper because it didn't provide enough benefit to the class. Their sole argument is this imbalance. And if there is an imbalance, then adjust it on the fee side. The defense agreed, the defendants in this case, agreed as part of the settlement not to contest the fees, right? We agreed up to a certain maximum level, that's right. Yes. Of $850,000 of fees and costs. So if the court were, if the panel were to simply send back the fee award, that's of direct benefit to your client? Yes. I mean in the sense that it would, but again, the whole idea here is not to benefit. If we send it back, the message certainly is give them more because she couldn't give them more. But the message is this is too much, and that directly benefits your client. Yes. So the process in the settlement that sort of started with the defendants not aiding the court in any way in its determination of the reasonableness of the fee, which is what ordinarily happens in fee litigation, right? Yes. Do you think the correct and proper result would be for the district, to send it back to the district court and have them adjust the fee downward, which directly benefits your client? Look, let me, I don't think it's, first of all, proper to send it back at all. I think that the court did go through very thoroughly both the Churchill factors and the underlying settlement and went through thoroughly. But if we were to send it back, your position is that it ought to be on the fee award. Only. So. The only objection here is the balance between the benefit to the class and the fee award. So, yes, exactly. It's not about benefiting the defendants here. It's about what did the plaintiff's counsel and the named plaintiffs deserve. That's suggesting, counsel, you're doing anything wrong. No, I know. You're doing your job. But I want to, but I'm not up here to advocate. If you were the CEO of Motorola, I would want you to argue the way you're arguing. Yeah. Well, I hope he feels that way, too. But the point I want to make here is that the fee, that the court applied Churchill faithfully. The way this court, courts in this circuit, analyze. I accept that. But how can we send the fee award back and not send the rest of it back? How can the district court make that analysis of the split and the reasonableness, which you agreed with me earlier, it needed to do, if we only send part of it back? Well, because you already have a ruling by the court on the underlying merit settlement. Did the class get a fair, adequate, and reasonable settlement? Did it get consideration that was fair, adequate, and reasonable? They did. So, basically, we'd send it back and say, you need to take another look at the attorney fee award. And, as my colleague said, really, it's saying you need to look at whether you should chop it down. Yes. That would be the only. If you agreed with the Brennan objectors and what they're saying, that's the remedy. It's not to throw the baby out with the bathwater. Thank you. Thank you, Your Honor. I do want to just. That's the baby in the bathwater? Well, I believe the courts have already addressed that. And there is no appellate court that has ever upheld a settlement this bad. And, in fact, this court has reversed settlements that are better than this, where twice as much Cypre relief was awarded. There was meaningful injunctive relief because it was a civil rights case. And the attorneys were only getting $50,000. There was even proportionate relief between the Cypre and what the attorneys were receiving.  And the Seventh Circuit has thrown out several settlements much better than this one. And the district court ignored all those precedents by saying, oh, well, that's okay, because here I can determine the attorney's fees separately. But, first of all, that's not a difference that's material. But, second of all, all of those cases were cases where the underlying district court determined the attorney fee award separately. For example, in Molsky v. Glynch, the district court was bound by this court's precedent in Zucker v. Occidental Petroleum and had to determine the attorney's fee award separately from the underlying, had to evaluate the attorney's fee award separately under 23H. So the district court did commit that error in law. Now, in terms of the baby in the bathwater, you know, a settlement has to be fair, adequate, and reasonable. And I acknowledge we're not challenging the adequacy of the settlement. If the parties negotiated ab initio, 100,000 in Cypre relief, and 25,000 for the attorney's fees, you know, I couldn't say, no, that should be 200,000. You know, I couldn't quibble like that. But that wasn't what happened here. If the parties had negotiated a $950,000 common fund, and then the attorneys came in and said, now we want 90% of that, that never would have happened. So instead they negotiated a settlement worse for the class because any reversion would go to the defendant to protect their own attorney's fees. And the district court not only did not scrutinize that, she rewarded them for it by specifically saying, I'm going to give them everything they ask for because the defendants agreed to it, and if I reduce it, it's just going to go to the defendants anyway. So there's not a baby in bathwater problem here because the underlying problem is the underlying unfairness and unreasonableness of the structure of the settlement. What was the common fund you would have recommended in this case? Well, the parties, it was a hypothetical common fund. I'm not saying that the parties had to agree to $950,000 in a common fund for it to be fair. I'm saying if the parties had negotiated a common fund of which only 100,000 were to go to Cypre and the attorneys come in and say we want 90% of the common fund, the judge would have reacted with shock, disdain, and disgust. And instead of negotiating for that common fund, they structured the settlement to protect their own fee request by ensuring that. . . You're saying it's hypothetical, but it's not. I'm trying to figure out what common fund would they have set up. It sounds like you're saying they could have had a common fund of $1 million or $900,000 all Cypre, and then they should have . . . Asked for their attorney's fees from . . . . . . 25% of that. So that's what they should have done. Yes, Your Honor. And, again, that's low. That's Staten that says, and Johnson v. Comerica, that there is not an economic difference between the two. The only material difference between the two is that it's worse for the class when you set it up this way because any reversion goes to the defendant rather than to the class, the putative clients that these attorneys are supposed to be representing. I'm happy to answer any other questions you have, but otherwise I'd ask this Court to follow the precedents and reverse the settlement. All right. Thank you very much, counsel. Thank you, Your Honor. Appreciate the argument. We'll stand and recess. This Court is adjourned.
judges: Zouhary, Hawkins, Fisher